IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAM HARGROVE, et al.,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 11-7744** |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM OPINION**</u>

**Tucker, J.**                                                      **May ____, 2012**

Presently before the Court is a Motion to Dismiss Plaintiffs' Complaint by Defendant, the Commonwealth of Pennsylvania. (Doc. 3.) Upon careful consideration of Defendant's submissions, and for the reasons set forth below, Defendant's Motion will be granted.

## I.    PROCEDURAL HISTORY

<u>Pro se</u> Plaintiffs Sam Hargrove, Frank Campbell, Annette Carter, and Tanya Bates initially filed this action in the Court of Common Pleas of Philadelphia County naming as Defendants the Commonwealth of Pennsylvania ("Defendant Commonwealth" or "the Commonwealth"), the Commissioner of the Pennsylvania State Police, and Pennsylvania State Police Troopers Jamal Pratt, Juan Andrews, and Corporal Gant (collectively, the "Defendant Troopers"). (Doc. 1 at 8.) To date, only the Commonwealth has been served with the Complaint. In their Complaint, Plaintiffs allege that Defendants violated their constitutional rights under the Civil Rights Act of 1964, 42 U.S.C. §§ 1983 and 1985, by subjecting them to a

warrantless search, false arrest, and false detention.  Plaintiffs also allege libel, slander, and infliction of emotional distress under Pennsylvania state law. (Doc. 1.) On December 21, 2011, the Commonwealth removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1 at 6.) The United States District Court for the Eastern District of Pennsylvania has original jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, over these claims. In lieu of an Answer to Plaintiffs' Complaint, Defendant Commonwealth filed the present motion, seeking to dismiss the Complaint as against them, asserting that Plaintiff had not adequately supported its claims. (Doc. 3.) Although Defendant Commonwealth filed its Motion on December 23, 2011, to date, Plaintiffs have failed to respond to the Motion. Therefore, the Court treats Defendant's Motion as unopposed.

## II.    **FACTUAL BACKGROUND**

The facts, construed in the light most favorable to Plaintiffs, are as follows. On June 30, 2008, Pennsylvania State Troopers Jamal Pratt and Juan Andrews entered the premises of Rockland Auto Sales and requested hundreds of files pursuant to an investigation they were conducting on behalf of the Pennsylvania Department of Transportation. (Doc. 1 at 12.) The following morning, at approximately 9:30 AM on July 1, 2008, Troopers Pratt and Andrews returned to Rockland Auto Sales with Corporal Gant demanding that Plaintiffs produce certain business records. (Doc. 1 at 13.) Plaintiffs complied with all the officers' document requests. (Doc. 1 at 13.)

According to Plaintiff Hargrove, Defendant Gant asked Plaintiff Hargrove to explain how Rockland Auto Sales was able to sell such a large quantity of vehicle tags.  (Doc. 1 at 13.) Plaintiff Hargrove informed Defendant Gant that, in addition to selling cars, Rockland Auto Sales is also a vehicle tag agency. (Doc. 1 at 13.) Defendant Pratt allegedly took all of the

2

dealerships' tags and "made" Plaintiffs Hargrove and Campbell sign a paper relinquishing their rights to those tags. (Doc. 1 at 13.) Defendant Corporal Gant next ordered Defendants Pratt and Andrews to place the female employees under arrest. (Doc. 1 at 13.) When Plaintiff Hargrove inquired why only the female employees were being arrested, Defendant Corporal Gant allegedly ordered Defendants Pratt and Andrews to arrest the men for "criminal conspiracy." (Doc. 1 at 13.)

At approximately 10:30 AM that morning, the Defendant Troopers transported Plaintiffs from Rockland Auto Sales to the Pennsylvania State Police, where Plaintiffs were allegedly handcuffed to a wooden bench until approximately 6:00 PM. (Doc. 1 at 13.) Plaintiff Hargrove claims that during that time he was not permitted to contact his attorney or make a phone call. (Doc. 1 at 13.)  At approximately 6:00 PM, the Defendant Troopers transferred Plaintiffs to the Philadelphia Police Department ("PPD"). (Doc. 1 at 14.)  As Plaintiffs were escorted out of the building, television reporters and news crew were assembled to question Plaintiffs about their arrest. (Doc. 1 at 13.)

Plaintiffs spent the night of July 1, 2008 in the custody of the PPD. (Doc. 1 at 14.) On July 2, 2008, Plaintiffs learned they were individually being charged with 610 counts each for forgery, tampering with public records, criminal conspiracy, "id-writing," issuing fraudulent title registration insurance, misapplying entrusted government property, and submitting false documents to authorities. (Doc. 1 at 14.) As a result, each Plaintiff was charged with approximately 4200 counts, with the exception of Annette Carter who was charged an additional 610 counts for not being a certified notary public. (Doc. 1 at 14.) At the bail hearing on July 2, 2008, the presiding judge released Plaintiffs on their own recognizance.  (Doc. 1 at 14.)

As a result of this incident, Plaintiffs complain to have suffered emotional distress as a

result of their fear of going to jail for committing alleged frauds on the public. (Doc. 1 at 14.) Plaintiffs also claim that Defendants caused them to suffer embarrassment by arranging to have a television news conference during their transfer from the Pennsylvania State Police to the Philadelphia Police Department. (Doc. 1 at 14.) Additionally, Plaintiffs allege that Defendants subjected them to libel and slander by arresting them, without probable cause, for the sole purpose of injuring Plaintiffs' business and "good name." (Doc. 1 at 14.) Finally, Plaintiffs claim to have suffered more than twenty-four hours of false imprisonment as a result of "malicious prosecution," which they substantiate by pointing out that the judge found insufficient evidence to proceed to trial. (Doc. 1 at 14.) For these alleged injuries, Plaintiffs ask this Court to rule in their favor and award them appropriate monetary damages. (Doc. 1 at 14.)

## III.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer 468 U.S. 183 (1984); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of a motion to

4

dismiss, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007). Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). There the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice to defeat a Rule 12(b)(6) motion to dismiss. Ashcroft, 129 S. Ct. at 1949. In evaluating whether a plaintiff has met the pleading requirements, a district court must identify "the 'nub' of the . . . complaint — the well-pleaded, nonconclusory factual allegation[s]." Id. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be

5

applied by district courts when presented with a 12(b)(6) motion to dismiss. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." <u>Id.</u> at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. <u>Id.</u>

IV.    **DISCUSSION**

   A.    **The Commonwealth is Not a "Person" Who Can Be Sued Under §§ 1983 and 1985**

Plaintiffs have no legal basis for asserting their federal civil rights claims against the Commonwealth of Pennsylvania. In <u>Will v. Michigan Dep't of State Police</u>, the Supreme Court clearly articulated that a State is not a "person" within the meaning of Section 1983. 491 U.S. 58, 65 (1989). The term "persons" has an identical meaning under Section 1985. <u>DiBartolo v. City of Philadelphia</u>, 2000 WL 217746, at * 5 (E.D.Pa. Feb. 15, 2000). Thus, neither States nor state officials acting in their official capacities are "persons" within the meaning of Sections 1983 or 1985. <u>Rode v. Dellarciprete</u>, 617 F. Supp. 721, 723 (M.D.Pa. 1985), <u>aff'd in relevant part</u>, 845 F.2d 1195 (3d Cir. 1988); <u>Crawford v. Commonwealth of Pennsylvania</u>, 2003 WL 22169372, at *4 (M.D.Pa. Sept. 12, 2003). Because the Commonwealth is not a "person" within the scope of §§ 1983 and 1985, Plaintiffs' federal civil right claims against the Commonwealth are barred and must be dismissed.

**B.      The Commonwealth Has Sovereign Immunity Against Plaintiffs' State Law Claims**

All state entities are entitled to immunity under the Eleventh Amendment unless that right is waived. Laskaris v. Thornburgh, 661 F. 2d 23, 25-26 (3d Cir. 1981); see U.S. CONST. amend. XI. Under Pennsylvania law, the Commonwealth retains sovereign immunity under the Eleventh Amendment unless the General Assembly "specifically waive[s] the immunity." 1 PA. CONS. STAT. § 2310; see also 42 PA. CONS. STAT. § 8521. The Pennsylvania General Assembly has enumerated only a limited number of instances in which the Commonwealth cannot raise the defense of sovereign immunity. See PA. CONS. STAT. § 8522(b). With the exception of those claims described in § 8522, "the Commonwealth's immunity is otherwise intact." Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000); see also Robinson v. Ridge, 996 F.Supp. 447, 449 n. 3 (E.D.Pa. 1997). Thus, the Commonwealth enjoys sovereign immunity against claims for damages based on negligent and intentional torts. See Frazier v. SEPTA, 868 F. Supp 757, 762 (E.D.Pa. 1994) (finding that plaintiff's claim of negligent infliction of emotional distress does not survive under the vehicle liability exception described in § 8522).

Despite the Commonwealth's voluntary removal of this lawsuit to federal court, Pennsylvania retains all the sovereign immunity defenses it would have enjoyed had the matter been litigated in state court. Lombardo v. Pennsylvania Dep't of Public Welfare, 540 F. 3d 190, 195, 198 (3d Cir. 2008). The Third Circuit has unambiguously held that while the Commonwealth's voluntary removal from state to federal court invokes the jurisdiction of the federal court, the State retains its sovereign immunity under the Eleventh Amendment, including

immunity from liability. <u>Lombardo</u>, 540 F. 3d at 198.

       In the matter before this Court, the Commonwealth is immune from liability for Plaintiffs' state tort claims of libel, slander, and infliction of emotional distress. The Commonwealth has neither waived its Eleventh Amendment sovereign immunity, nor are such claims included in the statutory exceptions enumerated in § 8522. <u>See</u> 42 PA. CONS. STAT. § 8522 (b); 1 PA. CONS. STAT. § 2310. For these reasons, Plaintiffs' state tort claims against the Commonwealth must be dismissed.

## IV.   <u>CONCLUSION</u>

       For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief may be granted. As such, this Court grants the Defendant Commonwealth's Motion to Dismiss Plaintiffs' Complaint as against them. An appropriate Order follows.